**CASE NO:** 3:22cv345-CWR-FKB



SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

JUN 2 1 2022

ARTHUR JOHNSTON
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

### LINDA MCCOY- PLAINTIFF/PRO SE

VS.

**MISSISSIPPI DEPARTMENT OF REVENUE-**
**CHRISTOPHER GRAHAM………………DEFENDANT**

**STATE OF MISSISSIPPI**
**LYNN FITCH……………... ……………… DEFENDANT**

### REQUEST FOR JURY TRIAL

**Linda Hays McCoy, PRO SE**
**109 Sharanne Lane**
**Brandon, MS.  39042**
**Telephone: (601)672-9370**
**mccoylinda8@aol.com**

1

**STATEMENT OF ISSUES**

1) Whether the actions of the state of Mississippi and the Mississippi Department in depriving McCoy of property in the form of wages and benefits violate her constitutional right to due process.

2) Whether the law used to deprive McCoy of her property in the form of wages and benefits is discriminatory and unfair, referring to Mississippi Code §27-7-45.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI**

CAUSE NO. _3:22-CV-345 CWR FKB_

**LINDA T. MCCOY, PRO SE**                    **PLAINTIFF**

**VS.**
**STATE OF MISSISSIPPI, ATTORNEY**        **DEFENDANT**
**GENERAL LYNN FITCH**

**MISSISSIPPI DEPARTMET OF REVENUE,
COMMISSION CHRISTOPHER GRAHAM**

## REQUEST FOR MOTION TO DETERMINE COMPLAINT OF VIOLATIONS OF DUE PROCESS

Comes now, **Linda T. McCoy**, acting Pro se (*McCoy*) files this "*Request for Motion to Determine Complaint of Due Process* and equal protection violations under the Fourteen Amendment including both procedural and substantive due process committed by the Mississippi Department of Revenue (the Department) and the State of Mississippi (State of Mississippi) who used inadequate pre- and post-deprivation procedures, and discriminatory, unequal employment practices to deprive McCoy of her Life, Liberty, and Pursuit of Happiness in the form of an attachment of 100% of her disposable wages under Miss. Code 27-7-45(2).

### AUTHORITY

Under *Article III of the Constitution*, federal courts can hear "all cases, in law and equity,

arising under this Constitution with a federal ingredient. (*Osborn v, Bank of the United States, 9*

*Wheat. (22 U. S. 738 (1834).* Under *28 U.S. CODE§1331-Federal Question* – Title 28 of the

United States Code is the general federal question jurisdictional statute, which grants federal

district courts with original subject matter jurisdiction over "all civil actions arising under the

Constitution laws, or treaties of the United States.

## JURISDICTION AND VENUE

1.  Plaintiff brings this action pursuant to 42 U. S. C. §42 U.S.C. §1983 for violation of civil

Rights under the Fifth and Fourteenth Amendments to the United States Constitution.

2.  This case presents a federal question within this Court's jurisdiction under Article III, §2

of the United States Constitution and U. S. C. §§1331 and 1343.

3.  Declaratory relief is authorized by 28 U.S.C.§§2201and 2202.

4.  Venue is proper in this Court under 28 U.S.C. §1391 because the parties reside in this

District, and a substantial part of the events giving rise to this claim occurred in this

District.

## PARTIES

5.  Linda McCoy is a resident of Brandon, Mississippi and has worked in Mississippi for

the past 40 years.

6.  Defendant Lynn Fitch is the Attorney General of the State of Mississippi and is being

sued in her official capacity.

7.  Defendant Christopher Graham, who is Commissioner of the Mississippi Department of

Revenue and is being sued in his official capacity.

## BRIEF STATEMENT OF THE ISSUE

McCoy would like this court to judge that the State of Miss. and the Department have violated her rights to due process under the Fourteen Amendment of the United States Constitution and has discriminated against her as a public employee under the same. These violations are procedural and substantive. The State of Mississippi and the Department lacked adequate pre-deprivation and post-deprivation remedies when they deprived McCoy of Life, Liberty, and the Pursuit of Happiness by attaching her disposable wages for unpaid income state taxes because she was a public employee under Miss. Code $27-7-45 taxes. Under this same rule and at the same time, the Department attached all the Medicaid payments she generated for her employer as a condition of her employment even though it was contractually assigned to the public clinic. These Medicaid payments supported her salary, operations of the clinic, and the salary of the clinic's support staff. Due to the attachment of her disposable income and the attachment of the Medicaid payments, McCoy could not work and experienced hungry, diminished earning capacity, loss of career opportunities, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, and distress. McCoy cannot even now work at a public healthcare facility as a Family Nurse Practitioner without being subjected to attachment of all disposable wages. McCoy cannot work at a nonpublic facility as a Family Nurse Practitioner where she generates Medicaid monies for the operation of the healthcare facility where she is working without the fear of the Department attaching all these monies. The Department has said that "Should McCoy obtain employment subject to the provisions of Miss. Code 27-7-45that she will be subject to100% garnishment. (*Mccoy vs. Miss. Miss. Dept. of Revenue 25CH 1:13-cv-001230, Doc. 5, p,*

*5-7, August 2013).*

### HISTORY OF FACTS

On November 9, 1999, the Department issued an income tax assessment against McCoy for tax years 1993, 1994, and 1995.   The Department issued assessments for the tax years 1996 and 1997 on May 7, 2002.  Assessments for the 1998, 1999, and 2000 tax years were issued on September 17, 2002.  The Department relied on information obtained from the Internal Revenue Service to assess McCoy resulting in an assessment of $93,996.15 in taxes plus penalty and interest.

McCoy owned a business and filed her tax returns past the statutory due date of April 15 after the year the tax is incurred.  The IRS accepted McCoy's returns, but the Department refused to accept her returns labeling them as late-filed returns. The Department labeled McCoy's late filed-return as "not a return" for relying on information and refused to acknowledge information from them even though they were signed and had tax information. Mississippi is "silent on the last day they will accept a tax return but do have statutory laws which address penalties for taxpayers who file a late return. Mississippi court records are filled with case texts in which the Department accepted late -filed returns after April 15 on taxpayers up to 12 years after they are due.

The Department's refusal to use McCoy's legally filed tax returns after April 15 of the required year, and the refusal of the Department to accept amended tax information from IRS of the same records the Department relied on to make McCoy's tax assessments, has left McCoy with a tax liability that is over 20 years old. There are many reasons for the  survival of McCoy's outstanding tax debts after twenty years: 1) McCoy's loss of employment as a result of the deprivation of all her disposable income, 2) McCoy being underemployed as the result of actions

of the state of Mississippi and the Department which deprived her poverty without due process in the form of wages and included attachment of legally assigned Medicaid payments used to pay for the operation of the public clinic she worked in. 3) Mississippi, unlike the rest of the states and the federal government does not have a statute of limitation for collection of state income taxes, 4) the Department has lost thousands of dollars of tax payments made by McCoy in payment of her tax liability and has lost many of their records used to assess McCoy. IRS no longer have the records which the Department relied on to assess her. The statute of limitation for collection of income tax at IRS is ten years and her records there have long been discarded.

Around August 2004 McCoy received notice that the Department was going to attached 100% of her disposable wages while she worked at Humphrey County Memorial Hospital in Belzoni, Miss., a public facility. McCoy did not receive a notice that the Department was going to attach monies she generated through Mississippi Medicaid which were contractually signed over to and payable to the Hospital as a condition of her employment which is a customary practice of healthcare workers throughout the state and nation. **(Ex. A)** Interestingly the levy of Medicaid for wages generated by McCoy in 2000 was for $9435.00 but McCoy's actual tax liability for this year was $1453.50 because she made $23776.00 for this year and had two underaged dependents. McCoy was not aware of a state law specific to public employees which mandated a 100% wage attachment of her disposable wages for a state income tax debt. **(Ex.B).** This information was not posted at her job or on the application she signed nor was this common knowledge of her Human Resources Dept. or to her state legislators. On October 6, 2004, McCoy went before MDOR to request a waiver of the attachment of her wages as payment of overdue income tax under the provisions of Miss. Code Ann. § 27-7-45. McCoy presented a letter to MDOR stating that she needed her wages for food. On or about October 20,

2004, MDOR issued an order denying the Plaintiff's waiver request on the grounds that she did not prove she had an illness or emergency that would allow the Commission to waive the provisions of Miss. Code Ann. § 27-7-45.

McCoy's tax assessment was made by auditors overseen by the Commissioner of the Mississippi State Tax Commission which in July 2010 became the Mississippi Department of Revenue (MDOR). The Commissioner signed the assessment notice sent to McCoy. McCoy's first administrative appeal opportunity was to the Board of Review which was composed of senior employees of the MDOR. McCoy unsuccessfully appealed to the next step in the administrative appeals process, which was MDOR's full tax commission, which was a three-person panel consisting of the Chairman and two Associate Commissioners who are all employed by the MDOR.  To seek judicial review in Mississippi courts, McCoy was required to post a bond twice the amount of the tax liability which was $93,996.15 plus interest and penalties. The "pay to play" requirement was an impediment to McCoy seeking judicial review as she did not have the money. The laws to change the bond requirement for a judicial appeal and to create a Board of Tax Appeals, an independent agency outside of the MDOR, was created in July 2012.

With a 100% wage attachment McCoy could not buy gas to travel the 200 miles a day to her job in Belzoni, could not hire an attorney, nor could buy food; she became unemployed. McCoy was employed as a Nurse Practitioner making $40.00 an hour in Belzoni. (She was forced to take a lesser paying job as a Registered Nurse and found it difficult to get a higher paying Nurse Practitioner job because she left her job in Belzoni abruptly and the story of the Medicaid money attachment discouraged other facilities from hiring her.

McCoy could not find a Nurse Practitioner job until 2012 in occupational health, a job which was short-lived but did not take Medicaid payments. McCoy continued to work as a Registered Nurse which paid a lesser salary. After the disposable wage attachment, McCoy struggled with depression and begin receiving mental health therapy in 2008 related to the trauma caused by the disposable wage attachment. McCoy is receiving mental health now. McCoy let her Family Nurse Practitioner Certification lap in 2006 because she could not find a job which did not use Medicaid. She did not renew her certification until 2011. McCoy has not worked as a Nurse Practitioner for any public nor nonpublic facilities which use Medicaid since that 2004. There are no facilities in Mississippi where McCoy can be employed without the threat of a 100% garnishment because all family clinics receive Medicaid.

### HISTORY Of the Law

At issue is Mississippi Code §27-7-45 (2) which states:

"If any officer or employee of the State of Mississippi, or any political subdivision thereof, does not pay his state income tax on or by August 15 after such income tax becomes due and payable or is in arrears in child support payments for thirty (30) days after such payments become due and payable, his wages, salary, or other compensation shall be withheld and paid to the Department of Revenue ..... The Department of Revenue **may**, in its discretion, waive the provisions of this subsection on behalf of any public officer or employee in the event of an extended personal illness, an extended illness in his immediate family or other emergency.

### 35 Miss. Code R. §1-05-103

(a) Recognizing the hardship that would result if a person's entire disposable earnings are levied for an extended period, it is determined that in most cases, the amount levied will be less that the entire disposable earnings. The employee shall withhold 25% of the taxpayer's disposable wages until the debt is satisfied. The restrictions to this rule are contained in 15 USC. S1673(a) and Ms. Code §85-3-4(1-2).
(b) The Commissioner reserves the right to increase or decrease the amount of wages levied.

Mississippi Code §27-7-45 was written in the 1934 and mandates that all disposable

wages owed to a public employee be garnished for a tax debt until the tax debt is paid in full.  In the 1990s, then Attorney General Mike Moore instructed state accountants who paid public employees, to withhold all wages of public employees who owe state income tax as if the employee had never been paid, including mandatory social security benefits, federal income taxes, and priority federal tax liens. **(Ex. C, p.2,3).**  Since the Department did not withhold social security, they were not required to match social security. As a result, Mississippians affected by the 100% wage attachment affected in 1991 will experience a missing social security benefit in their old age.

Kathy Waterbury from the MDOR said, "as I understand the idea behind the 100% wage garnishment was that if you are on the public payroll, you should pay the taxes that support the government you work for". (*Associate Press Article, Nov. 4, 2013*). **(Ex. D).**

Efforts can be traced back to 2012 where Mississippi Legislators have proposed legislation to change Miss. Code §27-7-45 and the 100% wage garnishment so that it would be in line with all non-public employees in Mississippi who have 25 percent of their wages instead of 100 per cent which can be done at the discretion of the MDOR.

On *September 6, 2011, the Joint Legislative Committee on Performance Evaluation and expenditure Review (PEER Committee)* which is composed of seven members of the Mississippi Senate and Seven members of the House of Representatives proposed to the Mississippi Legislature stated: "Considering state law requires the Department or Revenue to attach 100% of a public employee's wages should that individual become delinquent in paying taxes, the Committee could recommend that state law be amended to allow for a more reasonable resolution in such instances".  U. S. Senator Cindy Hyde Smith was on this Committee as a Mississippi state senator at that time. **(Ex. E, 5)**. This recommendation fell on deaf ears at the

Mississippi Legislature.

Under *35 Miss. Code R. §1-105-103*, the Commissioner of the MDOR reserves the right to increase or to decrease the amounts levied for a state tax debt. The Commissioner stated that he recognizes the hardship it causes for all the disposable wages of a citizen to be taken for an extended period so in most cases only 25% is taken. The Commissioner may in his discretion garnish 100% of the wages belonging to nonpublic employees; but in practice and in all cases of wage garnishments for state income tax debt of nonpublic employees, the Commission garnishes 25% of wages. (**Ex. F** )

The chart below represents the number of Mississippi Taxpayers who have had 100% of their disposable wages attached for a state income tax debt: (**Ex. G**)

| MDOR issued | 7322 100% wage | Attachments | In 2015 | |
|---|---|---|---|---|
| MDOR issued 6519 100% wage attachments in 2016 | | | | |
| MDOR issued 5519 100% wage attachment in 2017 | | | | |
| MDOR issued 5566 100% wage attachments in 2018 | | | | |
| MDOR issued 5959 100% wage attachments in 2019 | | | | |

The Department identifies the withholding of 100% of disposable wages at an attachment but also identifies the wage attachment as a garnishment.

## STANDARD OF REVIEW FOR DUE PROCESS

Under 42 U. S. C. 1983, deprivation of due process claims, the plaintiff must establish the existence of a constitutionally cognizable liberty or property interest and that there is a deprivation of the interests without an appropriate level of process or procedural guards.

When asking questions of law, the Standard of Review is *de novo. Mauney v. State ex. rel. Moore, 707 So 2d 1093, 195 (Miss. 1998)*. Acts of the State of Mississippi are presumed to be constitutional, and the unconstitutionality of an act must be proved beyond a reasonable doubt

11

before it may be declared invalid. *Chamberlin v. City of Hernando, 716 So. 2d 596, 601 (Miss. 1998)*. In Mississippi, while administrative appeal is not available to challenge issuance of liens, warrants, levy, or garnishments, chancery courts have jurisdiction "to restrain the collection of any taxes levied or attempted to be collected without authority of law." (*Miss. Code § 11-13-11; Code Miss. R. tit. 35, § 107*. Jurisdiction is proper under § 11-13-11 where the following criteria are established: (1) the aggrieved taxpayer's complaint must allege an inadequate remedy at law; (2) there is, in fact, no adequate remedy at law; and (3) factual allegations, if proven, support the conclusion that the levy or collection of the challenged taxes are "without authority of law." *Marx v. Truck Renting and Leasing Ass'n, Inc.*, 520 So.2d 1333, 1339 (Miss.1987); *Lewis v. Mass Appraisal Servs.*, Inc., 396 So.2d 35-38 (Miss. 1981); *Fondren v. State Tax Comm'n*, 350 So.2d 1329, 1333-45 (Miss. 1977). The State of Mississippi added an extra requirement a lawsuit questioning the Constitutionality of state laws. To bring a lawsuit questioning the Constitutionality of the 100% wage garnishment under Miss. Code §27-7-45, the Chancery has said that McCoy would have to have standing in Mississippi on this issue. (*Miss. Tax Movemnt, Linda McCoy v. MDOR, State of Miss. civ. No. 21-cv- civ. No. 21-cv-01063, Aug. 202*). Standing is an aspect of subject matter jurisdiction." *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 826 (Miss. 2009). "A lack of standing robs the court of jurisdiction to hear the case." *Id.* (Internal quotations omitted). "'Mississippi parties have standing to sue when they assert a colorable interest in the subject-matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law.'" *Kinney v. Catholic Diocese of Biloxi, Inc.*, 142 So. 3d 407, 412–13 (Miss. 2014) (quoting *Schmitd*, 18 So. 3d at 826-27). "Standing must exist when litigation is commenced *and* must continue through all subsequent stages of litigation, or the case will become moot."

*BancorpSouth Bank v. Bruce Sweet Potato, Inc.*, 296 So. 3d 143, 150 (Miss. Ct. App. 2020. The Mississippi Chancery Court found that since McCoy, is not presently a state, city, or county employee and accordingly, is not presently having her wages garnished by the MDOR pursuant to Miss. Code Ann. § 27-7-45. (*Miss. Tax Movemnt, Linda McCoy v. MDOR, State of Miss. civ. No. 21-cv-01063, Aug. 2021).*

To bring claims in federal court based on claims based on procedural wrongs, plaintiffs must show a concrete and imminent injury to establish standing. *(Lugan v. Defenders of Wildlife, 504, U.S. 555, June 1992).* McCoy and Miss.  courts do not consider injury as a prerequisite to establish standing.

**The Fourteenth Amendment, Section 1 states "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."** The Fourteenth Amendment protects procedural process, individual rights under the Bill of Rights incorporated against the states, and substantive rights. The Fifth Circuit stated that the answer to whether a due process is of the procedural or substantive variety is found in supreme court cases. (*in Jauch, v.Choctaw County, et, al, No 16-6-690, Oct. 2017, p. 6) citing Wolff v. McDonnell,* "the touchstone of due process is protection of the individual against arbitrary action of government."(*Wolff v. McConnell, 418 U. S. 539, 558 94 S. Ct. 2963, 2976 (1974).* This is true in respect to procedural and substantive due process. (*See Cnty. Of Sacramento v. Lewis, 523 U. S. 833, 845, 118 S. Ct. 1708, 1716 (1998).* When "the fault lies in a denial of fundamental procedural fairness," the question is one of procedural due process, Id at 845-46, 118 S. Ct. at 1716 (citing Fuentes v. Shevin, 407 U. S. 67, 82, 92 S. Ct, 1983, 1995 (1972).  The procedural due process analysis starts with one inquiry; whether the state has "deprived the individual of a protected interest – life, liberty, or property."  Substantive due process concerns whether the

13

government has an adequate reason for taking away a person's life, liberty and the pursuit of happiness. (*Augustine v. Doe, 740 f. 2d 322, 327 (5ᵗʰ Cir. 1984).*

McCoy has continued expectation of her wages. In (*Board of Regents of State Colleges Et. al. v. Roth 408 U. S. 564 (1972)* in the case of an individual who worked at a Univ. of Wisconsin system on a year-to-year contract. Each contract made it clear that he should have no expectation that the contract would be renewed. The contract was not renewed, and he sued claiming that he was deprived of a property interest, and he should be given due process regarding the non-renewal. The Supreme Court ruled that he had no expectation to continue receipt of benefits. (id.577). The Supreme Court said that no longer is the right/priviledges distinction to be used, instead, the question of whether somebody has a proper interest is whether there is a reasonable expectation to continue receipt of benefits. The Judge explained that the ancient institution of property is to be protected because there are people who rely on the property for daily lives and must not be arbitrarily determined. The discrimination of public employees who have 100% of their disposable wages attached versus nonpublic employees have 25% of their disposable wages attaches represent.

McCoy believes the requirement of the Department to disclose her personal information about her illness or the illness of a close relative violates her **privacy rights** under the Fifth, Fourteenth and the other thirteen amendments as condition to get a waiver of 100% of her disposable wages. The United States Constitution contains no express rights to privacy. McCoy does not have the legal right to disclose information related to the illness of another person. In Roe, the Supreme Court used the right to privacy to extend to encompass a woman's right to privacy to have an abortion. (Roe v. Wade, 410 U. S. 113 (1973). The *Fifth Amendment* protects again self-incrimination which provides protection of personal information.

The Fourteen amendment Equal Protection Clause requires states to practice equal protection. Equal Protection forces a state to govern impartially – not to draw distinctions between individuals solely on differences that are irrelevant to a legitimate governmental objective. (*Amendment 14, Sect. 1.4.2.a*). The Equal Protection Clause holds that in considering other classification beside race, sex, etc., when certain fundamental liberties and interest are involved, government classifications which adversely affect them must be justified by a showing of a compelling interest necessitating the classification and by a showing that the distinctions are required to further the governmental purpose. The effect of applying the test, as in the other branch of active review, is to deny legislative judgments the deference usually accorded them and to dispense with the general presumption of constitutionality usually given state classifications. (*Kramer v. Union Free School Dist. 395 U S. 621, 627(1969)*).

Mississippi Code 27-7-45 is fraught with **discretionary** and **arbitrary** decisions that the Commissioner of the Department makes to issue an order of **attachment** on the **disposable** wages of a public employee.  It is imperative to define these terms.

**Disposable** wages mean that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by less to be withheld and which amounts are reasonable and are being deducted in the usual course of business at the time the garnishment is served upon the employer.  For the purpose of providing benefits for retirement, medical benefits for retirement, medical insurance coverage and which amounts are legally due or owed to  the employee in the usual course of business at the time the garnishment is served. (*Toby Sinclair v. John Hodge, No. 04-30947, 5th Circuit, July 2005*).

Black's Law Dictionary describe an **attachment** as a garnishment and as a court order seizing specific property like a bank account. This is a provisional remedy. Other sources state that an attachment is a short-term action to hold property so a person will not dispose of it such as a bank account. Both actions require deprivation of property. (Black's Law Dictionary, 2ⁿᵈ ed). The Department imposed a 100% garnishment of disposable wages.

**Discretionary** is the power of right to make official decisions using reason and judgement to choose among acceptable alternatives. There is no delegation of legislative power at all so long as the legislature has supplied an intelligible principle to guide the exercise of delegated discretion.

*(Toby Sinclair v. John Hodge – No. 04-3097, 5ᵗʰ Cir., July 2005)* citing {*(George R. Jarkesy, JR., Patriot 28, LL vs. Securities & Exchange. Com. No. 20-61007, May 2022)*}.

## ANALYSIS

Upon identifying a protected interest, courts ask what process is due. *See Ky. Dep't of Corr. V. Thompson, 490 Thompson, 490 u. S/ 454, 460, 109 S. Ct. 1904, 1908 (1989).* In asking that question, which test applies? Ordinarily, "the starting point for any inquiry into how much "process" is 'due' must be the Supreme Court's opinion in Matthews v. Eldridge, ""and we would consider the private interest at stake, the risk of erroneous deprivations under existing procedures considering available alternative or additional procedures, and the government's interest. (Id). The Fourteen Amendment protects procedural due process. Due process requires a minimum of notice, and a (2) a meaningful opportunity to be heard. A meaning opportunity to be heard requires 3) impartial tribunal. In procedural due process deprivation, the focus is on the remedial process or

whether the government has followed the proper procedure when it takes away Life, Liberty, and Pursuit of Happiness.

   **Procedural due Process Violation**: Around September 2004, McCoy received a notice of her assessment from the Department. McCoy was not notified that the Department would attach Medicaid payments which clearly showed that she was not the receiver of the payments. 100% attachment of disposable wages of public employees are not a known fact and was not in her employment contracts. Her expectations were that 25% of her wages would be garnished for any unpaid debts and taxes which is customary for all other debts, in all other states, and the federal government. McCoy's audit was done by auditors who were under the supervision of the Commissioner of the Department. The Commissioner signed the final audit. The first level of the appeal process was to the Board of Review which consisted of member of the Department. The next level of her appeal was to the Full Commission which consisted of the Chairman to two Commissioners, all of whom were employees of the Department. The procedure used to deprive McCoy of her property, the pre-deprivation procedures did not involve an impartial tribunal. The neutrality requirement helps to guarantee that Life Liberty and the Pursuit of Happiness will not be taken on basis of an erroneous and distorted conception of the facts of law, it assures the arbiter is not predisposed to find against the taxpayer. The next appeal level was the judicial appeal which required McCoy to post a bond which was two times the amount she owed. McCoy did not have money nor property to purchase the bond.  The judicial appeal marks the beginning of the **post deprivation** procedures.

   **Substantive Due process** protects certain rights not listed in the Constitution. Substantive due process provides those certain liberties are so important that they cannot be infringed without a compelling reason no matter the process. Where fundamental rights are not

an issue, substantive due process protects against arbitrary and oppressive government action. (Hyde Park Co. v. Santa Fe City Council 226 F. 3d 1207, 1209 (10 Cir.2000). The 100% attachment of 100% McCoy's wages caused her to experience hunger and hopelessness. She could not afford gas to go to work, she lost her job, could not work as a Family Nurse Practitioner so her income was decreased. Even now McCoy is having difficulty finding a Family Nurse Practitioner her career was cut short and does not have enough job experience. She is afraid of taking any job where she generated Medicaid and that is all of Mississippi Healthcare facilities. While Miss. Code mandated a 100% wage attachment of public employees, a waiver may be given for illness, illness of a family member, or some other emergency. These conditions make a waiver arbitrary and discretionary. The legislature in writing the law did not say what illness applies nor what emergency applies. In 2004 McCoy was dealing with some medical issues that she does not want to disclose for many reasons. The Department does not address how healthcare information will be stored or who will have access to it. McCoy told the Department that she needed her wages for food but did not receive a waiver. A right to food is amount the Bills of Rights. The Department did not consider having a lack of food an emergency.

While Miss. Code 27-7-45 required withholding all wages until the debt is paid. **35 Miss. Code R. §1-05-103** clearly states that the hardship of a 100% wage levy for an extended period is recognized as a reason to withhold 25% of disposable wages. In the statute, the Commissioner has the discretion to increase or decrease wages that are levied. The Commissioner in stating that a 100% wage levy may be done for a limited time describes the definition of an attachment. Miss. Code does not state that disposable wages are to be taken by attachment. Attachment is a short-term levy or garnishment for a specific property usually

reserved for bank accounts. The Department decided to use the term attachment in taking

McCoy's wages instead of garnishment to explain the excessive monies taken from her.  By the

Commission's own admission, he has the right to increase or decrease a waiver. McCoy owed to

the Department over $93000.00 plus interest and penalties. McCoy made $80,000 a year making

$40.00/hr. Subscribing to application of Miss. Code 27-7-45 by the Department, McCoy would

have to work about one and one-half of a year without wages for the taxes to be paid. Under 35

Miss. Code R. 1-05-103, the Commission could at any time decrease the amount of the wage

attachment of McCoy.

The Department attaches wages of nonpublic employees of Mississippi who owe state

income taxes 25%.  Under 35 Miss. Code R 1-05103, the Department can at any time increase

the wages of nonpublic employee to amounts up to 100% within the Commissioner's discretion.

The Commission has chosen to attach from nonpublic employee's 25% of their disposable wages

and has never attached 100% in payment of state income tax.

There are no compelling reasons to protect the interests of Mississippi by attaching 100%

of the disposable wages of McCoy. If there were, those reason would also exist to attach 100%

of the wages of nonpublic employees.

The Fourteenth amendment provides for equal protection under the law. Equal protection

Laws are not subject to arbitrary process. Miss. Code 27-7 45 mandates 100% of wage

garnishment for public employees and not non-public employees. A taxpayer can get a waiver of

illness or some other emergencies. The determination of qualifying illness and emergency is

ambiguous and is not explained in any statute. As stated in *Buffington vs. Mississippi*

*Department of Revenue NO 2009-CA-01658, 2010*, statutory interpretation is

appropriate if a statute is ambiguous on a specific issue.    Nonpublic employees are garnished

25% of wages but MDOR has the discretion to garnish 100%. One would think that if the MDOR has a need to tax public employees 100%, then that need would exist with non-public employees who out number public employees. There appears to be no logical explanation.

Waterbury in the Business Journal Article stated, as I understand, the idea behind the 100% wage attachment of public employees is that, if you are on the public payroll, you should pay the taxes that support the government you work for. If public employees are held to this standard, they should be informed prior to their employment with a public facility in Mississippi. Waterbury also said, "It is utilized as a last resort when taxpayers including public employees, do not respond to notices from the DOR". Both public and nonpublic employees have the same responsibility to pay state income taxes, but public employee have a 100% attachment and nonpublic employee have a 25% attachment. If both do not response to notices, they both should have the same amount levied. The fact that public employees are discriminated against in this matter gives the appearance of a punishment under color of law.

At one point Mississippi represented Kansas which has a 100% wage attachment of public employees. There are no laws which expressly state how much can be withheld for a wage garnishment in payment of income taxes, but there are many laws contained in the U. S. Constitution including the Federal Supremacy Clause which curtail collection of taxes to the extent that a citizens cannot maintain Life, Liberty, and the Pursuit of Happiness. Most states follow the 25% wage garnishment of the Federal government, but no state in the U.S garnishes public nor nonpublic employees 100% of their disposable wages. McCoy wrote the Kansas Department and received this answer logical answer.

"Kansas has the ability to garnish wages at 100%. However, we typically do not garnish at that rate. As a matter of practice, we usually start a garnishment of 50%, and if the taxpayer objects

due to the hardship of such a high rate we will usually drop the garnishment to 50%. I have actually never seen a case where we did garnish at 100% for the simple reason that if we took 100% of someone's wages, they would have no reason to go to work and no way to provide for themselves. While we do of course insist that people pay their taxes we are not in the business of driving them into bankruptcy by taking 100% of their wage". (**Ex. H**)

The following information is in support of McCoy's claim. For information to support loss of income: McCoy made a total of $32,229 in 2004, $27,644.00 was from wage she received at her public facility where she worked as a public employee until she became unable to travel to work due the Department attaching 100% of her disposable wages. Social security records are missing the social security wages from 2004 at her public job so she is attaching her paystub as proof. (**Ex. I**). McCoy had difficulty finding a Family Nurse Practitioner job in 2005 and 2006 and after the actions of Department which caused her to experience loss of job opportunities, loss of reputation, depression and hopelessness which all impaired her ability to work. Her income was decreased in 2005 to $7812.00 and in 2006 to $7729.00 because of the action of the Department.

McCoy obtained her Nurse Practitioner Certification in 2001 and expires every 5 years. McCoy did not renew her Nurse Practitioner license in Mississippi until 7/12/11 because she could not use it in her state of Mississippi. (**Ex. J**).  McCoy maintained a Drug Enforcement Act License which she used as a Nurse Practitioner that was good for five years. McCoy let her DEA license lapse because she could no longer find a Nurse Practitioner job to use it.  Now, she is unable to get a Family Nurse Practitioner job because she does not have experience as has not worked for years. McCoy experiencing nightmares and anxiety again after reliving the depression she

was asked to apply for a Family Nurse Practitioner job but realized she could not because the facility received Medicaid payments and the Department would issue wage attachments against the Medicaid payments meant for the payment of staff and the basic operations of the health clinic. McCoy could not go through this humiliation again. She began mental health therapy for the third time on 4/27/21 because of the actions of the Department. **(Ex. K).** McCoy has also led her Mississippi Medicaid number lapse. This is the requirement of all family healthcare clinic. She recently re-applied and received a Medicaid number which she is afraid to use.

## CONCLUSION

McCoy would like this court to rule that the Department violated her due process both procedural and substantive. McCoy would like this Court to rule that Department discriminated again her because she was a public employee by depriving her of her property interest in the form of a 100% attachment of her disposable wages. McCoy and suffered much after the actions of the Department and is in imminent danger of a 100% attachment again should she accept a position at a public facility or generate Medicaid payments for healthcare facilities which are used to support the practice of delivering healthcare to low-income patients.

McCoy would like this court to award her damages as a result of the Department who violated her due process rights as the Court sees fit.

Respectfully submitted the 21st day of June 2022,

Linda T. McCoy/ Pro Se
109 Sharanne Lane
Brandon, MS. 39042
Phone 601-672-9370
Email: mccoylinda8@aol.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

### CERTIFICATE OF SERVICE

I hereby certify that I served this **REQUEST FOR MOTION TO DETERMINE complaint of violations of due process** to the following parties by hand delivery:

Attorney General of Mississippi, Lynn Fitch
550 High Street
Jackson, Ms.  393201

Mississippi Department of Revenue
500 Clinton Center Drive
Clinton, Miss.  39056

U. S. District Court
501 E. Court St.
Ste 2.500
Jackson, Ms.  39201

_Linda T. McCoy_

Mississippi Tax Movement

Date  6/21/2022

Linda T. McCoy
109 Sharanne Lane
Brandon, Ms. 39042
Phone 6016729370
Email:  mccoylinda8@aol.com